Pittsburgh Reflector Company v. Commissioner.
Pittsburgh Reflector Co. v. Commissioner
Docket No. 370-66.
United States Tax Court
T.C. Memo 1968-75; 1968 Tax Ct. Memo LEXIS 223; 27 T.C.M. (CCH) 377; T.C.M. (RIA) 68075; April 25, 1968. Filed *223 Sidney B. Gambill, 747 Union Trust Bldg., Pittsburgh, Pa., for the petitioner. John W. Tissue and Donald W. Howser, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of the petitioner of $52,536 for 1962 and $78,254 for 1963. The petitioner alleged that the Commissioner erred in failing to include in the petitioner's net operating loss for 1959, to be carried over to the tax years, the following ordinary loss deductions for worthlessness: 1. Stock of Pittsburgh Reflector Company of Canada
$ 60,000.00
2. Accounts receivable due the petitioner from the Canadian Company
63,053.81
3. Advances made to or on behalf of the Canadian Company by the petitioner
121,984.38
4. Note of the Canadian Company to the petitioner
25,000.00
5. Additional advance to the Canadian Company made by the petitioner 55,860.00
Total
$325,898.19
Less credit for balance in inventory 1,978.49
New Total
$323,919.70
The petitioner now contends that the cost of the Canadian Company stock was $55,000, instead of $60,000 as shown above, reducing the total claimed to $318,919.70. Findings of Fact
*224 The petitioner is a New Jersey corporation which has been engaged for many years in the manufacture of lighting fixtures at its plant at Irwin, Pennsylvania. It used an accrual method of accounting. It filed its Federal income tax returns for 1959, 1962 and 1963 with the director of internal revenue for the Pittsburgh district. Its principal place of business at the time the petition herein was filed was in Irwin, Pennsylvania. All stipulated facts and exhibits are incorporated herein by this reference. The petitioner manufactured a broad line of fluorescent fixtures principally for commercial, industrial and institutional use and a line of incandescent fixtures featuring a mirror reflector. It did not manufacture, and prior to 1954 did not sell, lighting fixtures such as are used in the sanctuaries of churches but did sell fixtures suitable for use in the other parts of churches. Holden Lighting Manufacturers, Ltd. (hereafter called the Canadian Company) was a Canadian corporation with a plant at Toronto. It manufactured a line of ornamental lighting fixtures, ornate exterior church lighting fixtures and fixtures suitable for use in church sanctuaries. The Canadian Company *225 had been Canadian sales representative of the petitioner and the petitioner shipped its finished products to the Canadian Company for sale in Canada. However, the freight and duty problems made this system uneconomical. The petitioner consulted Canadian officials as to duty on its imports to Canada and learned that it could ship unassembled parts of its fixtures into Canada with much less expense than it could ship in completed fixtures and that similar benefits could be obtained by shipping parts of the Canadian Company's fixtures to Irwin. The petitioner then made efforts to obtain all of the stock of the Canadian Company, consisting of 450 shares of common, and on August 31, 1954 obtained all of that stock by giving in exchange 11,000 shares of its Class B non-voting common stock. Later the name of the Canadian Company was changed to Pittsburgh Reflector Company of Canada, Ltd. The fair market value of the petitioner's Class B non-voting common stock on August 31, 1954 was not less than $5 per share. 378 The stock of Holden Lighting Company of Canada was not acquired by the petitioner as an investment, but was acquired for the purpose of shipping unassembled parts of *226 the petitioner's products into Canada at a savings in freight and duty, having them assembled, completed and sold by the Canadian Company with better prospects of profits to the petitioner and having the Canadian Company ship unassembled parts of certain of its products to the petitioner which would then assemble and complete the finished fixtures so that the petitioner could advertise and sell them to complete its own line and thus increase its sales. The petitioner began to ship unassembled parts of its fixtures to the Canadian Company which then assembled those parts, adding others where needed, and completed each fixture for sale in Canada. The Canadian Company began to ship to the petitioner at Irwin unassembled parts of its church fixtures, particularly those for use in sanctuaries which the petitioner needed to complete its church line, and the petitioner completed, assembled and advertised those fixtures to help the sale of its own church line. Petitioner's sales after allowances for the calendar years 1954 through 1959 were as follows: Year
Sales
1954
$3,169,793.00
1955
3,873,976.00
1956
4,654,029.00
1957
4,389,255.00
1958
3,822,756.00
1959
3,253,278.00
*227 The petitioner, as owner of the Canadian Company, began in 1954 to guarantee its borrowing from Canadian banks. The amounts thus owed banks were used by the Canadian Company in its operations and varied from time to time. The Canadian Company operated at a loss in fiscal years 1956 through 1959. The petitioner made required payments on the borrowings. The total of those payments amounted to $121,984.38 on August 12, 1959 and the Canadian Company still owed $73,264.39 to a Canadian bank. The Canadian Company owed $25,000 of accounts receivable to the petitioner on April 30, 1956 and then gave the petitioner its non-interest bearing note for $25,000 due May 15, 1958 subordinate to the bank loans. The note was never paid. The petitioner's books and records showed that on September 8, 1959 the Canadian Company owed the petitioner $63,053.81 for manufactured fixture parts theretofore shipped by the petitioner to the Canadian Company. This debt was never paid. The indebtedness incurred and paid by the petitioner for the benefit of the Canadian Company and the accounts receivable due to the petitioner from the Canadian Company were reasonable and necessary incidents to carry out the *228 purposes of the petitioner in acquiring the Canadian Company as found above. The petitioner sustained losses on those debts in 1959. Those losses were incurred in the ordinary course of the petitioner's business. The petitioner became dissatisfied with the operations of the Canadian Company and wanted to dispose of it. Gerald J. Shear, of Toronto, Canada, entered into a written agreement with the petitioner on August 12, 1959 which he later rejected and it was replaced by another dated September 8, 1959. The agreement of September 8, 1959 between the petitioner and Gerald J. Shear states that an attached balance sheet "fairly and correctly sets out the financial position of the Canadian Company as of August 10, 1959, subject to a reduction in the value of the inventory as of that date to an agreed value of $15,000 for the purposes of this Agreement." The balance sheet referred to showed "Inventories $61,816.31." The balance sheet, as adjusted by the change in inventories, showed a net deficit of $66,115.04 and current liabilities of $97,715.77. The agreement contained an acknowledgment that the petitioner was a creditor of the Canadian Company in the amount of $202,752.31 and *229 the petitioner agreed to increase that debt to $276,016.70 by a payment of the Canadian Company's debt to a bank and then to assign that total debt, less $5,000, to Shear by having the Canadian Company convert that debt into its promissory notes payable on demand with 6 percent interest which the petitioner would then endorse to Shear. Paragraph 7 of the agreement was in part as follows: The parties agree that the purchase price for the shares and promissory notes to be assigned to Shear or the assignment referred to in Paragraph 5 hereof is hereby changed from $100.00 to $20,000.00 of lawful money of Canada, payable by certified cheque on the closing date of which $100.00 is allocated to the shares and $19,000.00 to the notes or assignment having a face value of $271,016.70. * * * 379 The $20,000, as required by Shear, was paid to a bank to reduce by that much indebtedness of the Canadian Company to the bank. The August 12, 1959 agreement provided that the Canadian Company would issue $5,000 par value of its preferred shares to the petitioner, reducing its indebtedness to the petitioner by $5,000. That was done. It was understood and agreed between the petitioner and *230 Shear that from August 11, 1959 to September 3, 1959 the petitioner had shipped goods to the Canadian Company in the amount of $1,243.32 and that the Canadian Company would pay that sum to the petitioner upon the usual credit terms. The agreement of September 8, 1959 was carried out by the parties thereto and the Canadian Company. The indebtedness owing by the Canadian Company to the petitioner was worthless in September 1959 and the petitioner sustained a loss of $55,000 on the stock of the Canadian Company in that year. Opinion MURDOCK, Judge: The petitioner contends that it sustained a net operating loss of $318,919.70 in 1959 which can and should be carried forward into the tax years and the Commissioner erred in not carrying it forward into those years. The Commissioner contends that the petitioner acquired the stock of the Canadian Company in 1954 as an investment, a capital asset, the loss from its sale in 1959 is a long-term capital loss and as such is not a part of a 1959 net operating loss. He also contends that the losses from unpaid accounts receivable and the unreimbursed payments to banks of amounts borrowed by the Canadian Company are not a part of a net operating *231 loss because they were not incurred in the ordinary course of the petitioner's business. The findings of fact decide all of the issues in this case. The evidence clearly shows that the petitioner did not buy the stock of the Canadian Company as an ordinary investment, or for investment purposes, but, instead acquired it for a very different purpose. That purpose was to enable the petitioner to ship unassembled parts of the fixtures it manufactured to the Canadian Company for assembly and sale at a saving in freight costs and duties and to effect similar savings by having the Canadian Company ship to the petitioner unassembled parts of its church light fixtures since it needed the sanctuary fixtures to fill out its line in sales to churches. The losses on the stock, on the accounts receivable and on the payment of the Canadian Company's debts to banks were all incurred in the petitioner's attempt to increase and improve its regular business and were directly related to that business. They resulted in 1959 in net operating losses of that business and can be carried forward to the tax years to the extent of $318,919.70. Cf. Both ; *232 ; , affd. . The Canadian Company became hopelessly insolvent in 1959 and could not pay its debts to the petitioner. The petitioner wanted to get rid of that company and free itself from further obligations and losses resulting from its ownership of that company. It agreed with Shear that, if he would take the company, the petitioner would pay or cancel all of the debts of that company and transfer all of its common stock to him. Shear thus acquired the Canadian Company free of its former debts. He issued his check for $20,000 in the deal but it was to be and was used, as he required, to discharge a part of a bank debt which the petitioner was already obligated to pay. This reduced the loss which the petitioner is claiming herein but it did not result in any income to the petitioner or represent a payment of any amount by Shear to the petitioner for the stock of the Canadian Company. The petitioner had to pay the bank debts of the Canadian Company and take large losses on amounts due it from that company in order to get Shear to take the *233 Canadian Company from the petitioner. There was in reality no payment by Shear to the petitioner for the stock. The petitioner is not including a $5,000 amount as a part of its loss. This is related in some way to the issuance of $5,000 par value of preferred stock of the company as owned by Shear. This matter is not in issue and needs no discussion herein since it is not a part of the loss claimed. Also an item of $1,978.49 is used to reduce the loss and needs no discussion. Decision will be entered under Rule 50. 380